UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHARLES TRAVIS MAPLES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.: 3:21-CV-179-RLJ-DCP |
| | ) | |
| SAM ROGERS, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Petitioner Charles Travis Maples, a prisoner in the custody of the Tennessee Department of Correction, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging the legality of his confinement under Knox County judgments of conviction for drug-related offenses. Having considered the submissions of the parties, the State-court record, and the law applicable to Petitioner's claims, the Court finds that no evidentiary hearing is warranted, and the petition should be denied.[1]

**I.     SUMMARY OF RELEVANT EVIDENCE AND PROCEDURAL HISTORY**

An experienced confidential informant ("CI") approached Knoxville Police Department Officer Michal Geddings and told him an individual she knew as "Purple" was selling crack cocaine [Doc. 12-3 p. 91-95]. The CI provided Officer Geddings with a telephone number for Purple and a license tag number for a vehicle he drove [*Id.* at 97]. Officer Geddings linked the

---

[1] An evidentiary hearing is only appropriate in a § 2254 action where review of the record demonstrates that a petitioner might be entitled to relief if given an opportunity to prove the factual allegations raised in the petition. *See* Rules Governing Section 2254 Cases in United States District Courts ("§ 2254 Rules"), Rule 8(a); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

license tag number to a reported traffic stop in which Petitioner was a passenger in the registered vehicle [*Id*. at 97]. After Officer Geddings pulled Petitioner's driver's license and, observing that he matched the CI's physical description of "Purple," he created a six-photograph array that included Petitioner and five other random individuals resembling Petitioner [*Id*.]. From that array, the CI positively identified Petitioner as the individual she knew as "Purple" [*Id*.].

At the direction of Officer Geddings, the CI placed a recorded telephone call to Petitioner to arrange a purchase of $100 of cocaine [*Id*. at 100]. Thereafter, the CI purchased cocaine from Petitioner on three separate occasions [Doc. 12-3 p. 100-22; Doc. 12-4 p. 10-20]. Prior to each purchase, Officer Geddings searched the CI and provided her with recording equipment and money with which to make the purchases before accompanying her to an apartment on Merchants Drive where she purchased the cocaine [Doc. 12-3 p. 101-21; Doc. 12-4 p. 10-20]. During a transaction on October 24, 2012, the CI purchased .62 grams of crack cocaine from Petitioner for $100, and an audio recording of the transaction was played for the jury [Doc. 12-4 p. 12, 44]. During a November 1, 2012, transaction, the CI purchased .47 grams of crack cocaine from Petitioner for $100, and a video recording of this transaction was played for the jury [*Id*. at 18-19, 50]. During the final transaction on November 5, 2012, the CI purchased .78 grams of crack cocaine for $100, and a video recording of this transaction was played for the jury [*Id*. at 21, 53]. Witnesses testified that the drug transactions occurred within 1,000 feet of an elementary school [Doc. 12-3 p. 124; Doc. 12-4 p. 61].

A jury convicted Petitioner of two counts of the sale of 0.5 grams or more of cocaine in a drug-free school zone, two counts of the delivery of 0.5 grams or more of cocaine in a drug-free school zone, one count of the sale of less than 0.5 grams of cocaine in a drug-free school zone, and one count of the delivery of less than 0.5 grams of cocaine in a drug-free school zone. [Doc. 12-1 p. 38-40; Doc. 12-4 p. 144-145].

At sentencing, the trial court merged the convictions of the delivery of cocaine into the corresponding charges of the sale of cocaine and imposed an effective total sentence of 25 years imprisonment [Doc. 12-9 p. 42-43, 50-51].

On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed Petitioner's convictions. *State v. Maples*, No. E2016-00589-CCA-R3-CD, 2016 WL 7048058, at *1 (Tenn. Crim. App. Dec. 5, 2016), *perm. app. denied* (Tenn. Mar. 8, 2017). On March 8, 2017, the Tennessee Supreme Court denied Petitioner permission to appeal [Doc. 12-16].

Petitioner filed a pro se petition for post-conviction relief on March 31, 2017 [Doc. 12-17 p. 5-38]. Counsel was initially appointed to assist Petitioner in his post-conviction proceedings, but Petitioner later retained counsel who filed both an amended petition and a supplement to the petition [*Id.* at 42, 48-49, 65-72, 74-86].

A post-conviction hearing was held where trial counsel testified that he been retained to represent Petitioner for "many cases" prior to the instant case and had never argued with Petitioner or had difficulty communicating with him [Doc. 12-18 p. 7, 11-12, 22-23]. Trial counsel testified that he obtained discovery in this case and stated that he believed he reviewed the discovery with Petitioner [*Id.*]. Counsel recalled that the jury heard audio recordings setting up the drug transactions, and that a video recording showed at least one hand-to-hand exchange between Petitioner and the CI [*Id.* at 26-27]. Based on the evidence, counsel determined that making identity an issue in the case would have been "very difficult" [*Id.* at 27-28].

Instead, counsel testified, he conceded Petitioner's guilt of simple possession or casual exchange because he wanted the jury to view Petitioner as an addict rather than a dealer [*Id.* at 13-15]. Counsel's strategy was to attempt to "knock down" the charged offenses to simple possession or casual exchange and establish that the exchange did not occur in a drug-free zone [*Id.* at 9-16]. Counsel maintained that he executed that strategy by attempting to establish that the CI was a

3

fellow addict with whom Petitioner would exchange drugs "back and forth" for personal use; that the school zone was calculated with aerial photographs that yielded inaccurate distances; and that the CI was an addict who was under the influence of drugs while being paid to make controlled drug buys [*Id*. at 12-16]. Counsel stated he was sure that he discussed trial strategy and the issue of testifying at trial with Petitioner, as it was his practice to do so [*Id*. at 9, 18-20, 33]. Trial counsel was certain he advised Petitioner not to testify, as he believed the State could have "t[orn] him apart" on cross-examination [*Id*. at 33].

Petitioner testified at the post-conviction hearing that trial counsel met with him "no more than three times," never reviewed discovery with him, and never discussed witnesses or trial strategies with him [*Id*. at 48-51]. Petitioner conceded that counsel took notes at their meetings and discussed the facts of the case with him [*Id*. at 49]. Petitioner claimed, however, that counsel never discussed with him the strategy of admitting Petitioner's guilt to the lesser offenses of simple possession or casual exchange, though he did admit that counsel discussed with Petitioner whether he should testify at trial [*Id*. at 51-53]. Petitioner also maintained that he intended to fire trial counsel on the day that trial began, but because Petitioner's new counsel was not at court on the day of trial, Petitioner had to proceed with trial counsel [*Id*. at 56-58].

The post-conviction court found Petitioner's testimony that counsel "never discussed the strategy of conceding guilty of a lesser included offense at any time" to lack credibility and found trial counsel "pursued a reasonable strategy" based on the facts of the case [Doc. 12-17 p. 93]. The trial court accredited counsel's testimony that he discussed strategy with Petitioner and found that Petitioner did not express objection to that strategy [*Id*. at 97-98]. The post-conviction court found Petitioner failed to demonstrate that counsel performed deficiently, and it denied relief [*Id*. at 99]. The TCCA affirmed that judgment. *Maples v. State*, No. E2019-00475-CCA-R3-PC, 2020 WL

4

918612, at *1 (Tenn. Crim. App. Feb. 26, 2020), *perm. app. denied* (Tenn. July 17, 2020). The Tennessee Supreme Court denied permission to appeal [Doc. 12-26].

On or about April 16, 2021, Petitioner timely filed his federal habeas petition, alleging the following, as paraphrased by the Court:

Ground I: Ineffective assistance of counsel

Ground II: Actual innocence of drug transactions in school zone

[Doc. 1]. After an initial review, the Court ordered Respondent to file a response to the petition along with the State-court record [Doc. 6]. Respondent subsequently filed the State-court record and an answer to the petition [*See* Docs. 12, 16, 17]. Petitioner did not file a reply to Respondent's answer, and the deadline to do so has expired [*See* Doc. 6]. This matter is ripe for review.

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro*, 550 U.S. at 473.

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *Williams,* 529 U.S. at 407-08; *Brown v. Payton*, 544 U.S.

5

Case 3:21-cv-00179-RLJ-DCP   Document 18   Filed 01/12/22   Page 5 of 10   PageID #: 935

133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. Thus, a petitioner is entitled to relief on a federal claim decided on its merits in State court only where he demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### III. ANALYSIS

#### A. Ineffective Assistance of Counsel

Petitioner claims that trial counsel performed ineffectively by conceding Petitioner's guilt to lesser offenses during trial [Doc. 1 p. 5].

To prove that he received constitutionally ineffective assistance of counsel, Petitioner must demonstrate that counsel was deficient, and that he was actually prejudiced as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[2] Conclusory

---

[2] Petitioner cites *United States v. Cronic*, 466 U.S. 648 (1984) as the legal standard governing this claim [Doc. 1 p. 5]. However, in *Cronic*, a case decided the same day as *Strickland*, the Supreme Court held prejudice should be presumed where (1) there is a complete denial of counsel during a critical stage of trial; (2) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; or (3) the circumstances surrounding the trial made it so unlikely that any lawyer could provide effective assistance. *See id*. at 659-60. This Court finds the record plainly demonstrates that trial counsel actively defended Petitioner throughout the trial. Thus, the Court finds that the test of *Strickland*, rather than the presumption of prejudice in *Cronic*, is the appropriate lens through which to view Petitioner's claim of ineffective assistance.

6

allegations of wrongdoing by counsel "are insufficient to state a constitutional claim." *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) (citing *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998)). Rather, deficiency is established only when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" the Sixth Amendment guarantees. *Strickland*, 466 U.S. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id.* at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id.*

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

The TCCA noted that Petitioner's defense was based around the notion that Petitioner "was not, in fact, a drug dealer but was instead a user of drugs who occasionally exchanged drugs with other users as a means of supporting his own drug habit." *Maples II*, 2020 WL 918612, at *6. The TCCA determined that trial counsel's strategy was reasonable, and that Petitioner otherwise failed to demonstrate that he was prejudiced because of counsel's strategy. *Id.*

The record supports the findings of the State courts. Along with the witness testimony as to Petitioner's guilt, the jury was presented both audio and video recordings of Petitioner selling drugs to a CI. Given the evidence of Petitioner's guilt of a drug exchange, trial counsel's strategy of conceding Petitioner's guilt to misdemeanor offenses to provide the jury with a less severe sentencing option cannot be deemed unreasonable. *See Strickland*, 466 U.S. at 690 (holding

7

"strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Accordingly, the Court finds that the rejection of this claim is not contrary to, nor is based on an unreasonable application of, *Strickland* or its progeny.

B. **Actual Innocence**

Petitioner next argues that he is actually innocent of some of the convicted offenses because a July 2020 change in the law reduced the "drug zone" surrounding schools from 1,000 feet to 500 feet [Doc. 1 p.6-7]. Petitioner notes that testimony at his trial established that the crimes occurred approximately 707 feet from a school [*Id.*].

Actual innocence is not itself a substantive claim, because in federal habeas proceedings the only cognizable grounds for relief are those that allege a violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). In fact, freestanding claims of actual innocence have never been recognized as cognizable grounds for federal habeas relief. *Herrera v. Collins*, 506 U.S. 390, 416-17 (1993); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief on a freestanding claim of actual innocence."). Therefore, Petitioner's claim of actual innocence must be dismissed as a non-cognizable claim.

Additionally, a subsequent change in State law, without the violation of a federal right, does not raise an issue on federal habeas review. *See* 28 U.S.C. § 2254(a) (providing for review of state prisoner's habeas petition only on ground that challenged confinement violates Constitution, laws, or treaties of the United States); *Estelle v. McGire*, 502 U.S. 62, 67-68 (1991) (holding "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Finally, even if the Court could fairly consider Petitioner's argument to raise a federal issue, the fact that Petitioner would not be subject to the State "drug zone" convictions if he

committed the offenses today has no bearing on a conviction that was based on a proper application of State law at the time Petitioner's convictions were finalized. *See, e.g.*, *Fiore v. White*, 531 U.S. 225, 226 (2001) (holding whether change in state law must be applied to convictions requires consideration of whether interpretation of state law at issue properly articulated the law when the conviction "became final"); *Bunkley v. Florida*, 538 U.S. 835, 842 (2003) (directing lower court to determine whether interpretation of statute was in keeping with law "at the time [the petitioner's] conviction became final"). At the time Petitioner's convictions became final, the "drug zone" included areas within 1,000 feet of a school. *See* Tenn. Code Ann. § 39-17-432 (West 2014) (enhancing sentenced based on proximity of drug sale to school). Accordingly, this claim is non-cognizable and otherwise without merit.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

s/ Leon Jordan  
United States District Judge